ROBINSON et al. v. LAMBERT LAND-
SCAPE CO.

No. 6053.

Court of Appeal of Louisiana.
Second Circuit.

April 4, 1940.

Robert J. Newson, of Shreveport, for appellants.

Hollingsworth B. Barret, of Shreveport, for appellee.

HAMITER, Judge.

Edward Robinson, aged 53 years, sustained an accident on July 28, 1937, while engaged in the performance of his employment with the Lambert Landscape Company. It resulted in a simple fracture of the fibula of his right leg, about one inch above the ankle, and also slight abrasions there and at the same location on his left leg. Medical attention was given him on the same day by Dr. Norphleet, consisting primarily of the application of a cast on the fractured member. Thereafter, the said physician observed his condition and treated him until about October 25, 1937, when he was discharged as being able to return to work. He died January 22, 1938.

A brother and sister of decedent, namely, Joe Robinson and Mollie R. Bell, brought this suit against the above named employer claiming benefits under the provisions of the Louisiana Employer's Liability Act, Act No. 20 of 1914. They assert in their original and supplemental petitions that the accident sustained by the employee aroused and activated a dormant disease which he possessed and contributed to his death. Joe Robinson seeks recovery for the expenses of the last illness and of the funeral, which it is alleged he "did contract to pay and has paid something on both." The first mentioned expenses are fixed at $250 and the latter at $150. Mollie R. Bell petitions to be paid compensation, as a sister wholly dependent on decedent for support, of 65% of his weekly earnings for a period of 300 weeks.

Exceptions of no cause and no right of action were interposed by defendant. These were overruled.

Defendant then answered denying the material allegations made by the plaintiffs.

A trial of the merits resulted in a judgment rejecting the demands of plaintiffs and dismissing the suit. They appealed.

Since the perfection of the appeal, Mollie R. Bell has abandoned her claim for compensation payments. Thus there is left for our review only the question of defendant's liability to Joe Robinson for the medical and funeral expenses of decedent. In this connection, appellants' counsel, in his brief, states: "We are only going to try to uphold the claims of the plaintiff, Joe Robinson, who paid and contracted to pay for the medical expense and funeral bills of his deceased brother, and will not try to obtain compensation for his sister, Mollie Bell, since we believe that the records show that she was not solely dependent on her deceased brother, and therefore had no right to compensation."

█ It is essential in obtaining an award of the claimed benefits that the evidence disclose with legal certainty a causal connection between the sustained accident of the employee and his subsequent death.

The above mentioned simple fracture and attendant abrasions were received, as aforestated, on July 28, 1937. During the period of treatment and observation by Dr. Norphleet that continued until the discharge on October 25, 1937, he saw the

employee every three to five days, except for the first two weeks following the application of the cast. This physician testifies that no infection or other complicating agency ever appeared at the situs of the injury; and that when the patient was discharged, the abrasions had entirely cleared, the fractured bones had united with good position, the recovery was normal in all respects, and walking without difficulty was enjoyed.

During the early part of January, 1938, Dr. Boyce was called to the home of the employee and there found him in bed "severely ill, helpless physically and mentally", and suffering from syphilis of the brain and of the spinal cord. In diagnosing the case a history of the illness was obtained from a sister and "one or two other colored people present." Briefly, this showed that the employee "was injured July 28, 1937; he fell out in August during treatment; following the falling out he acted curiously and that curiousness progressed until in November when he was pronounced mindless which mindlessness progressed on to death." Treatments and attention were given by Dr. Boyce during a period of about 14 days until death stilled his suffering on January 22, 1938.

The body was thereafter viewed by the coroner of Caddo Parish while at a funeral home. This official issued the following report on the death: "Called by Dr. Boyce; conference concerning case fews days ago with members of family and Attorney Herold; information from Dr. Boyce indicates that there was no trauma, that he had been unconscious about four days, had been a mental case six or eight weeks; that he was refused admission to Hospital and Doctors had spinal fluid test made and shows 4 plus Wasserman. No poison suspected. I visited the home and went to undertaker's, examined the body and found him to be an emaciated, colored male without any visible marks of consequence, Doctor's report was acceptable. Death certificate signed as: Apparently C–S lues with psychosis and coma and probably complications."

In support of the demands urged herein, counsel for appellants relies on the testimony of several colored lay witnesses regarding the "falling out" and curious actions of the employee; and also on the opinion of Dr. Boyce, the only medical expert offered in behalf of plaintiffs, expressed in the following words: "If I am to accept the stories as given me by his family and friends, this man died with syphilis which was latent in his body and was activated as a result of the injury which he received on the 28th day of July, 1937."

The physician's quoted opinion was largely influenced, as the record clearly indicates, by the information given him that the asserted "falling out" took place in the month of August while the employee was under the treatment of Dr. Norphleet. When asked whether or not he would have a different view if it were shown that his informers were mistaken in the fixing of the date, he stated that, "It would look less likely that the leg injury would have a close connection with the activated syphilis." With reference to this important detail, Dr. Norphleet, the first attending physician, testifies that he had no personal knowledge and received no information regarding a "falling out" while the employee was under his care and attention, this being from the date of the accident until October 25th.

Pertinent to a consideration and decision of this controversy is the testimony of Dr. Boyce that the symptoms which he found and those described in the obtained history of illness, could reasonably occur in syphilitic persons without the assistance of any trauma. Also important is the fact that the report by such physician to the coroner did not suggest trauma as a contributing cause of the death.

The physicians who appeared as witnesses for the defendant testified emphatically that the leg injury sustained by the employee in no manner activated or aggravated the syphilitic condition, and did not hasten or influence the death.

After carefully studying all of the evidence in the record, we are of the opinion that the burden of proving the demands urged herein has not been discharged and that the suit was correctly dismissed.

Our holding on the merits renders unnecessary a consideration of defendant's exceptions of no cause and no right of action.

The judgment is affirmed.